# INTERNATIONAL HARVESTER COMPANY
## *vs.*
## SAMUEL M. NEUHAUSER.

*Judgments by confession: entry by clerk; effect of—; promissory note, with confession of judgment for amount due; maker unable to read. Sale of goods: defects; notice; waiver.*

Under section 6 of Article 26 of the Code, a judgment by confession, on a note containing a confession of judgment after maturity, for the amount of the note "then due," with interest, may be validly entered by the clerk of the court; and the fact that the attorneys for the defendant showed no *express* authority for their appearance does not affect the question.      p. 176

The mere fact that the maker of the note (who could read) did not know that it contained the authority for a confession of judgment, is not sufficient to authorize the court to strike out the judgment.                                        p. 176

A judgment by confession may be stricken out for cause shown, the same as any other judgment.                  p. 176

Where a machine is sold with a guaranty that made it a condition that notice of defects, etc., should be sent to the home office of the vendor company, and the purchaser of the machine gave notice of defects to the local agent only, the sending of mechanics by the company to remedy the defects operates as a waiver of the requirement of written notice to the company.
                                                   p. 180

Where such a note was given for a machine which the vendor had guaranteed, and at the time the vendor had the confession entered the purchaser had complained of its defects and was endeavoring to have it taken off his hands at a price, to enter such judgment for the whole amount was improper.
                                                   p. 181

*Decided March 2nd, 1916.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joshua Clayton* and *Wm. P. Cole, Jr.,* for the appellant.

*D. G. McIntosh* and *A. A. Piper,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order striking out a judgment which the appellant had obtained against the appellee—the motion having been made after the expiration of the term at which the judgment was obtained. The cause of action was a note dated July 8, 1914, given for the price of a threshing machine, purchased of the appellant by the appellee for which he signed an order dated June 4th, 1914. The appellee ordered the machine "subject to all conditions of agreement and warranty printed on back of this order and made a part hereof," and agreed that "purchaser will receive same on arrival, will pay freight and charges thereon from factory where made, and upon delivery or tender thereof, will pay to your order . . . . . . . . . . . $ . . . . . . . . cash, and execute approved notes payable to your order as follows: $845.00 due Nov. 15, 1914. * * * To be settled for by note on delivery." The "warranty and agreement" was in part as follows: "International Harvester Company of America (Incorporated) hereby warrants *said* thresher, attachments and engine to be well made, of good material and durable with proper care, and to do good work if properly operated by competent persons, with sufficient power, and the printed rules and directions of the manufacturer intelligently followed. If after three days' trial by the purchaser, said property shall fail to fulfill the warranty, written notice thereof shall at once be

given to said company at Harvester Building, Chicago, Illinois, and also to the agent through whom the same was purchased, stating wherein it fails to fulfill the warranty, and reasonable time shall be allowed said company to send a competent man to remedy the difficulty, the purchaser rendering necessary and friendly assistance."

The note which is under seal was payable on or before the 15th of November, 1914, for $845.00 with interest, and contained among other provisions: "I hereby confess judgment to be entered by the proper officials at any time after maturity for the amount then due hereunder, with all exemptions hereby expressly waived." On April 6th, 1915, a case was docketed in the Circuit Court for Baltimore County, the appearances of attorneys for the plaintiff and the defendant were entered, a narr., the note, agreement for judgment by confession signed by the attorneys, and an order of Court that the judgment be entered in accordance with the agreement were filed. The same day a judgment by confession was entered for $864.43 with interest and costs. There is nothing in the record showing whether the attorney who appeared for the defendant had been authorized by him to do so, but as the defendant swore that he did not know that the note contained authority to confess judgment or that a judgment had been entered, until an execution was issued and his property was levied on (which is not denied), the attorney probably appeared at the instance of the plaintiff by reason of the provision in the note.

Preliminary to a consideration of the main question in the case it may be well to dispose of several matters: 1. We do not find that the action was instituted under the Speedy Judgment Act, as suggested by the appellee, but it was a judgment by confession entered the day the case was docketed, and hence it becomes unnecessary to determine whether a judgment obtained under that Act should be stricken out if there was a misjoinder of counts in the declaration. 2. It was held in *Tyrrell* v. *Hilton,* 92 Md. 176, that a judgment could be validly entered by confession on a note con-

taining a provision, "and we do hereby confess judgment for the above sum, with interest and costs of suit," even by the clerk of the Court, under section 6 of Article 26 of the Code, and that it made no difference that the attorneys who assumed to appear for the defendants were without express authority to do so—the defendants having given their assent to the judgment by their own signatures to the obligation. The Court also said: "We can not doubt that any judge having ordered to be entered a judgment under the circumstances we have supposed would refuse to vacate it upon the grounds urged here." As we have seen, the entry of this judgment was authorized by an order of a judge, and as it could not be stricken out merely because the only authority for it was contained in the note if the clerk had entered it under section 6 of Article 26, *a fortiori* it could not for that reason be when authorized by Court. 3. It has, however, been settled in this State, in addition to what may be implied from what was said in *Tyrrell* v. *Hilton,* that a judgment by confession may be stricken out for sufficient reasons, as well as any other judgment. *Sunderland* v. *Braun Packing Co.,* 119 Md. 125. 4. The mere fact that the appellee did not know that the note contained an authority for a confession of judgment would not of itself be sufficient to justify the Court in striking out the judgment. He can read, and in the absence of fraud or something which would furnish a sufficient excuse for not reading the note before signing it he could not be relieved of the judgment wholly on the ground that he did not know that it contained such a provision. The cases of *Spitze* v. *B. & O. R. R. Co.,* 75 Md. 162; *Smith* v. *Humphreys,* 104 Md. 285; *Paper Bag Co.* v. *Carr,* 116 Md. 541, and others in this State which might be cited, show that something more than a mere want of knowledge that the note contained such a provision would be required, in order to justify the Court in striking out the judgment. 5. This brings us to the important question in the case. There is evidence tending to show a breach of the warranty quoted above by the appellant as to the ma-

chine. It is true there is some evidence to the contrary, but if the testimony of the witnesses produced by the defendant is correct, the machine not only did not do good work but on the contrary did the work in a way that was both unsatisfactory, and calculated to injure the appellee's business, as no one would likely employ him the second time to thresh grain, if the machine worked as some of the witnesses testified. Moreover, it was conceded by the appellant's agents who delivered the machine that it had been in a wreck and was damaged when it reached the station. Mr. Snavely, the agent who made the sale, testified: "As I told you, the machine came there in bad repair, some pulleys had been robbed of the belts, the leather that goes around the pulley, and the house sent these out and made them all right. But the machine gave trouble. Mr. Neuhauser continually complained to me about the machine, and I would immediately call up the house in Baltimore over the long distance telephone and tell them, and they would say they would send him a man, and, after a while, they would send a man, and that is the way the thing dragged along. From time to time, Mr. Neuhauser said, I can't work this machine, I will have to put it aside. Well, I said, Sammy, this company is all right. I have been doing business with them, I feel sure they will make this machine all right, you go on and use it, and I would still put it up to the company to assist me to satisfy this customer, it was to my interest to make this machine all right, I had an interest at stake to make it stay." He also said on cross-examination: "As I stated some of the pulleys were robbed of their belting, that lining around the pulleys, and the weigher that goes up, extends probably two feet above the main machine, was cracked and I can't just mention in detail what all was the matter."

That witness was called by the appellee and there is a judgment against him as a guarantor or endorser (the record is not clear which) of the note, but Mr. Johnson, another agent of the company, testified on behalf of the company that, "Mr. Phelps and me got there before Mr. Neuhauser

or Mr. Snavely, and we found the machine had been in a wreck or something, the weigher and blower were bent and also there was cross sill on top of the thresher broke, and all the leather belting was taken from the boxes and also the covering, the leather covering on the pulleys, was gone." Again he said: "Why, it looked to me as if the bagger and weigher had been struck on top by something and bent out, and also split the cross-sill off, the end off where the weigher and bagger were bolted, split the end of that sill out, and also the leather belting was taken, and also the covering on the cylinder."

He claimed that the company had corrected the trouble, and had furnished what was lost, etc. But it is conceded that when the appellee saw the machine he refused to sign the note until he was finally persuaded to do so by Messrs. Johnson and Snavely. The former told him that the company would furnish the lost articles, and that the warranty would protect him. Some of the evidence was to the effect that Mr. Johnson said that signing the note was a mere form, but he testified that he did not know whether he said that or not. He also said that, "Mr. Neuhauser refused to sign the note until I told him them would be replaced and be satisfactory to him. I said, Mr. Neuhauser, you have got a warranty for the machine, signed by the company, that is satisfactory to you, isn't it? I read the warranty to him when I taken the order, and it is on the back of the order. It says: This machine is well made, of good material, guaranteed to do good work for a machine of its kind and class, if properly operated, and he said, I guess that is all right, and he signed the note right on the front end of the car before ever the machine was unloaded from the car, and I turned it over and told Mr. Snavely to sign the note. He said, have I got to sign that? Certainly, you are the local agent, and he did. Mr. Snavely told him to sign the note, everything would be satisfactory, that he works or sold for the company for several years, and he never found them to do anything wrong yet."

Mr. Snavely testified as to that: "The machine came in at Timonium Fair Grounds to be unloaded in very bad condition, about ten days late, behind what they promised it there, and Mr. Neuhauser went over and examined the machine and came back and reported to me that the machine was in bad shape, in a wreck. And he said what was he going to do about it, and I said, we will meet you there tomorrow and I am sure the company is willing to make it all right, and I met him over there the next day with Mr. Johnson and he taken an account of the damage that was done, made up a list, with the understanding that the company would make it all right. So I told Mr. Neuhauser to unload the machine, and after it was unloaded, Mr. Johnson presented the note, said it was customary for him to sign a note at the time the machine was unloaded at the railroad, that they would be responsible. And Neuhauser objected, and putting a great deal of confidence in me, I said, you sign that note, I am sure the company is fair and I want you to feel I am square in the matter, and it will be all right, and with that understanding Mr. Neuhauser signed the note and it was a very warm day and we were two or three hours behind time, and he nor I neither read the note, I didn't really know it was a confessed judgment note, and I put my signature across the back of it because I had been doing business with the International Harvester Company fourteen years and nothing like this occurred before, I never signed no notes." Mr. Snavely was then asked: "And it was upon the statement that it would be made all right if he signed that note that he did sign it?", to which he replied, "Sure, that was the understanding when we made the deal with Mr. Neuhauser in the first, and the machine must be satisfactory. I went there and made a deal with Mr. Neuhauser, and then got one of their traveling men to come over to help complete it."

The plaintiff contends that as the warranty required the notice to the company, as well as to the agent, shown above, and as the notice was not given to the company at Chicago,

the defendant could not rely on the warranty. But the evidence shows that the company sent its men from time to time to fix the machine, and it must be held under the circumstances to have waived the notice in writing to the company at Chicago. According to the evidence of the defendant, some of the agents of the company were there in November, when they made certain repairs, and again on January 7th they had another trial of the machine, when one of the company's men was present. As late as the last of March or first of April he was still endeavoring to get the matter settled, and offered to pay $100.00 if the company would take the machine back. Mr. Snavely testified that they went to Mr. Neuhauser's in December and put on a new sill where the wheel had been hit and cracked, but he did not know what they did after that.

It appears therefore from the evidence that the defendant was still trying to have the matter adjusted shortly before the judgment was entered. If the defendant is correct, he did not justly owe the whole amount of the note and the entry of the judgment was a great surprise to him. The note only provided that judgment should be entered after maturity "for the amount then due hereunder," and it was inequitable and unjust to enter up the judgment for the whole amount. The Act of 1914, Chapter 393, now section 12, Article 75 of the Code, was in force when the note became due. It provides that, "In any suit *ex contractu* or upon any judgment, if the defendant shall have any demand or claim arising *ex contractu* or upon judgment against the plaintiff, the defendant may plead such claim specially, whether such claim of the defendant be for liquidated or unliquidated damages, and whether it be of such nature, as may be availed of by way of recoupment without such special plea or not." The defendant was therefore unquestionably entitled to make the claim for damages which arose under the warranty, by virtue of that statute, regardless of what he might have been permitted to do by way of recoupment before the statute.

Although we have said that the defendant is not excusable for not reading the note before signing it, and hence ought to have known that the provision in reference to confessing a judgment was in it, yet when he refused to sign the note Mr. Johnson brought the warranty to his attention and he and Mr. Snavely gave him every reason to believe that the company would treat him fairly. Its action in entering the judgment on April 6th, 1915, without notice to the defendant, waiting until the expiration of that term of Court and then issuing an execution on May 25th, does not accord with the assurances given by the agents of the company when they induced him to sign the note.

While we have recognized the right of a holder of a "judgment note" to enter up a judgment under the authority therein contained, yet when a Court is called upon to exercise what Mr. Poe calls its "quasi equitable powers," in determining a motion to strike out the judgment, it should be very careful to see that no improper advantage has been taken of the maker of such note in entering the judgment.

How far the appellee can sustain his claim is not for us to now determine, but we are of the opinion that under the circumstances the lower Court was right in striking out the judgment and giving him an opportunity to have his claim properly presented.

*Order affirmed, the appellant to pay the costs.*