## AUTOMOBILE BROKERAGE CORPORATION *v.* JOSEPH A. MYER.

[No. 9, October Term, 1927.]

*Decided December 8th, 1927.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*W. L. Marbury, Jr.,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellant.

*George P. McCeney* and *M. Hampton Magruder,* submitting on brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, the Rev. Joseph A. Myer, of Laurel, Prince George's County, Maryland, purchased of the Stutz agency of.the City of Baltimore one of its automobiles. After using it for a few days, it was injured in an accident, and was returned to the agency to be repaired and then sold by it.

In July, 1924, one McCussin called at the office of the agency, where he saw Mr. Marr, its sales manager, and, after examining the car, agreed to buy it and wished immediate possession. He was told that possession would be given at once if he paid the cash for it. He said he did not have the cash and would have to have it financed. He was then told that, to finance it, an investigation of his standing and character would be required. He replied that the appellant, the Automobile Brokerage Corporation, had financed him in another purchase and he thought that an investigation would not be required by that company. The matter of financing the purchase was at once taken up with the appellant, and the appellee, at the request of Mr. Marr, came to the city and he, with Mr. Marr, went to the office of the Automobile Brokerage Corporation, and there met its manager, W. Clark Brown.

A note for the deferred payments on the automobile was there prepared and signed by McCussin. After McCussin had signed the note, the appellee was asked by Mr. Brown to endorse it. He refused, saying that he did not know Mr. McCussin. To which Mr. Brown replied, saying that he had before financed McCussin and he had met every payment, and that the appellee's endorsement was simply for moral support. The appellee was then asked, "What words did Mr. Brown use to you as an inducement to have you endorse this note?" He said, "I would never hear from it, that it was a safe bet, a safe thing for me to put my name on it, that it would not have to be paid, that I would never hear from it, that it was a moral support to McCussin. I think McCussin was of the same faith that I am and I think Mr. Brown had that in mind."

The note mentioned was dated July 22nd, 1924, and was for the sum of $1,752.60, payable to the Stutz agency, in ten monthly installments, and endorsed by the Rev. J. A. Myer and others. It contained the proviso that, if any installment was not paid when due, the entire amount forthwith became due and payable at the election of the holder of the note. It also contained the following provision: "The undersigned hereby authorizes irrevocably any attorney at law to appear in any court of record in the United States and waive the issue and service of process and confess a judgment against the undersigned in favor of the holder hereof, for such amount as may appear to be unpaid hereon after maturity, together with costs and ten per cent. of the amount due hereon as attorney's fees." On the back of the note, over the signature of the endorsers, is found the further provision: "We severally authorize any attorney-at-law to appear in any court and confess judgment against each of us severally in favor of the holder hereof, for such amount as may be unpaid hereon after maturity, together with costs and attorney's fees."

Upon the execution and delivery of the note, the automobile was delivered to the purchaser, McCussin. The first installment, due on August 22nd, 1924, was paid, the one that became due on September 22nd was not paid, and, in the latter part of that month, the automobile was again injured in an accident and was abandoned by McCussin. Its whereabouts, however, was discovered, and the injured car was taken to the Stutz agency, where it was repaired and there left for sale. This was some time in the fall or early winter of 1924.

In May, 1925, Mr. Brown, accompanied by a young lady, a cousin of his, went to the home of Father Myer in Prince George's County. The purpose of his visit may be gathered from the evidence of the appellee, in which he said: "He (Brown) drove up to the house with a young lady in the car and told me that she wanted a car, and he was going to get it for her. I said, 'I will take you out in my car, which is a duplicate of that one,' and he asked me to do so. So,

Mr. Brown and this young lady and I drove up to the end of the concrete road, and there I changed places with her and she drove it back. She said she liked the car, that she always wanted a Stutz car. Mr. Brown seemed to be very much pleased. * * * He said, 'Father, I think this is a sale.' He said, 'Can I go and get this car?' He said, 'If I do not sell it to this prospect, the car will be disposed of and I will take up the note and pay the Stutz people the equity that you have in it.' * * * Mr. Brown assured me that everything would be all right, not to worry about it any more, and drove off with this lady friend."

He heard nothing more from the brokerage company until September of that year, when he learned that Mr. Brown was no longer in its employment, and that the note was still unpaid and the car in the possession of the appellant. It appears that, after the automobile was taken from the office of the Stutz agency by Mr. Brown, he went to Philadelphia, also to New York, for the purpose, as he said, to sell the car, as directed by the appellee. This fact, however, was denied by the latter, he saying that he never gave any direction to Mr. Brown to go to New York, Philadelphia, or elsewhere, to sell the car, for, since Brown's visit to him in May, he had been of the impression "that the whole thing was settled, that the car was gone," as Brown had said to him at that time, if the car was not disposed of in a few days he could consider the matter closed, the note taken care of, and the Stutz people settled with.

On January 15th, 1926, the note not having been paid, a judgment was entered against the appellee in the Circuit Court for Prince George's County, upon the power contained in the note, for the amount claimed by the plaintiff to be due and owing thereon.

The judgment was entered by the clerk on Friday, January 15th, of the October term, 1925, when on Monday following, January 18th, the January Term, 1926, commenced. On February 6th, 1926, a motion was made to strike out the judgment, to which an answer was filed, and after hearing upon motion, answer, and evidence taken, the court, on the

18th day of January, 1927, ordered that the judgment "be opened for the purpose of the trial of this case, and that said judgment shall meanwhile continue as a valid and subsisting judgment, unaffected by the motion of the defendant that the same be stricken out, and by the trial of the case, and not vacated unless and until it shall be finally determined by trial that the plaintiff is not entitled to said judgment."

The defendant, in addition to other reasons found in the motion, asked that the judgment be stricken out, "because he has a meritorious, *bona fide* and substantial defense to this suit," which he has not had the opportunity to present, as the suit was instituted and the judgment entered without notice to him.

The power contained in the note, in this case, did not authorize the entering of a judgment at once upon the execution and delivery of the note, but the power was to be exercised only upon the failure of the maker of the note to meet the payments as they became due and payable, and then only for the amount due and owing at such time. In this respect, the case differs from one where the note sued upon contains a power authorizing the entry at once of a judgment in accordance with an express agreement and understanding of the parties thereto, that the debt, evidenced by the note, should at once take the form of a judgment with the lien and advantages incident thereto.

Where the power to confess judgment is not to be exercised until some future time, if at all, the relation between the parties may be materially changed before such time is reached. The debt in that time may have been partially, if not fully, paid, or conditions may have arisen because of a breach of warranty or agreement made by the parties at the time of the execution and delivery of the note, by which the liability of the maker and endorser or endorsers of the note would be affected (*International Harvester Co. v. Neuhauser,* 128 Md. 173; *Wisner v. Reeside,* 139 Md. 221); or, before such time, some transaction or agreement between the parties may have been had, by which the makers and endorsers were excused or released from the payment of the

note. Therefore, where a judgment is entered without notice to the defendant upon a power contained in the note authorizing the entry of a judgment at some future time upon a condition therein named, it is, we think, but right and proper, upon the motion of the defendant, that the judgment should be opened to allow him to present any meritorious, *bona fide,* or substantial defense which may be shown to exist. *International Harvester Co. v. Neuhauser, supra; Wisner v. Reeside, supra; Phillips v. Taylor,* 148 Md. 163.

In *International Harvester Co. v. Neuhauser, supra,* the judgment sought to be set aside was entered by confession on a note given by the appellee to the appellant for the price of a threshing machine. In that case, Judge Boyd, speaking for the court, said: "While we have recognized the right of a holder of 'a judgment note' to enter up a judgment under the authority therein contained, yet, when a court is called upon to exercise what Mr. Poe calls 'quasi equitable powers,' in determining a motion to strike out the judgment, it should be very careful to see that no improper advantage has been taken of the maker of such note in entering the judgment."

In *Wisner v. Reeside, supra,* a case very similar to that of the *International Harvester Co. v. Neuhauser,* this court, speaking through Judge Urner, said: "There was a substantial basis for the controversy, in which the parties were engaged when the authority for entering a confession judgment was exercised, and the defense thus precluded was not only meritorious, but had been definitely asserted,' and this court affirmed the action of the lower court in opening the judgment to allow the defendant to present such defense. And in the more recent case of *Phillips v. Taylor, supra,* Chief Judge Bond, speaking for the court, said: "In this state, at least, judgments entered by confession are freely stricken out on motion at law to let in defenses.

There is in this case, we think, sufficient evidence showing that the appellee has a meritorious, *bona fide* and substantial defense, which he should be permitted to make to this suit, but, in so holding, we are not to be understood as deciding the question "whether the defendant would be able

to sustain his case on the merits," but as simply holding that "he should be given an opportunity to have his claim properly presented." *International Harvester Co. v. Neuhauser, supra,* and *Wisner v. Reeside, supra.*

The defendant, it is true, did not file his motion within the term in which the judgment was entered, but it will be borne in mind that the judgment was entered without notice to the defendant, on January 15th, of the October term, when the January term commenced on the following Monday, there being but two full days of the October term left, and one of these was Sunday, in which he could have filed his motion within the term.

In *Wisner v. Reeside, supra,* the judgment was entered on July 21st, 1920, and the motion to strike out that judgment was not made until the 11th day of October following, after the term in which the judgment was entered had expired. The court, speaking of the delay, said: "It was not until early in the following October that the appellee learned of the judgment against him, and on the eleventh of that month he moved to have it stricken out, to the end that he might have an opportunity to interpose his defense. * * * There was no lack of diligence in the effort to have the case opened, as the motion for that purpose was filed with reasonable promptness after the existence of the judgment had been discovered." We need not further discuss the question of delay in filing the motion in this case, in view of the case from which we have just quoted and other cases decided by this court.

The motion in this case was filed on the 6th day of February, twenty-two days after the judgment was entered. Just when the judgment was first learned of by the defendant is not shown by the record, but certainly no lack of diligence is shown on the part of the defendant in filing his motion.

The judgment, in our opinion, was properly opened and the order appealed from will be affirmed.

*Order affirmed, with costs to the appellee.*