DENTON NATIONAL BANK *v.* DANIEL C. LYNCH.

[No. 1, April Term, 1928.]

*Decided May 24th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, and PARKE, JJ.

*Wilbert L. Merriken,* with whom were *T. Pliny Fisher* and *Merriken & Merriken* on the brief, for the appellant.

*Wesley E. Thawley* and *Harry R. Lewis,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order by which a judgment in favor of the appellant, the Denton National Bank of Denton, Maryland, against the appellee, was striken out. The judgment was entered by the clerk of the Circuit Court for Caroline County, on the 21st day of April, 1925, upon two notes payable to the appellant, to which appeared the names of John K. Lynch, Anna B. Lynch and "D. C. Lynch" as makers.

The first of these notes was for $500, dated April 23rd, 1924, and payable in four months thereafter. The other was for $1,050, dated July 3rd, 1924, and payable in three months thereafter. Each of these notes contained a provison by which the makers, securities, or endorsers did thereby "confess judgment to be entered by the proper official at any time after maturity for the amount then due" thereon.

The judgment was entered by the clerk, under the authority conferred upon him by section 6 of article 26 of the Code, which provides that "the clerk of any court in this state may at any time enter a judgment by confession with the assent of the parties or attorneys in writing, which shall be filed with the titling, narr., cause of action and other papers in the case in which said judgment is entered; and the judgment so entered shall from the date of the entry of the same by the clerk have the same effect as if entered by order of court during the session of the court."

On November 12th, 1925, the appellee, Daniel C. Lynch, filed a motion asking the court to strike out the judgment so entered, so far as the same related to him. On February 15th leave was granted him to amend his petition or motion to strike out and, on February 19th, an amended petition was filed. A demurrer filed thereto on April 14th was thereafter sustained. Later, on July 12th, upon leave of court, a second amended petition or motion to strike out the judgment was filed, and to it a motion *ne recipiatur* was interposed and overruled. Whereupon a series of general and special demurrers were filed to the last named petition, all of which were overruled, and, in so ruling thereon, we find no reversible error committed by the court.

The ground of the motion to strike out the judgment was that the name of "D. C. Lynch" appearing to each of said notes was forged, it having been placed there not by the appellee, or by his authority, but by some person without his knowledge or consent. The defense made to this contention of the appellee was that, should it be found that the appellee's name upon said notes was forged, he, nevertheless, was not entitled to have the judgment stricken out, inasmuch as he had failed to file his motion to strike out within the term in which the judgment was entered, or had failed to act with due and proper diligence after learning of the existence of the judgment. A trial was had upon the motion, which resulted in the passage of an order striking out the judgment so far as it related to the appellee, and directing that the case be placed on the trial docket of the succeeding term, but retaining the lien of the judgment pending the trial of the case.

The facts as disclosed by the evidence are substantially these:

John K. Lynch, one of the signers of the notes, and a resident of Caroline County, in July, 1924, unexpectedly left the county. His brother, Daniel C. Lynch, a farmer, who had for thirty years lived near the town of Denton, hearing that his brother was suspected of forgery, went to the Denton National Bank, of Denton, and inquired of one Chaffinch,

vice-president, and at times acting cashier, of the bank, if there were notes there on which his name appeared, and he was told there were. He then asked to see them and he was shown three notes. One of these he admitted he had signed. This one he called the "Eugene Lynch note." The other two, the ones upon which the judgment in this case was entered, he said he did not sign, nor did he authorize any one to place his name thereon, and he did not expect to pay them. Mr. Chaffinch replied: "We don't know that, whether it is or not, but of course, if it is a forgery you are not expected to pay them." This conversation was in the month of August, 1924, and as stated by Chaffinch, the denial of appellee that he signed the notes was communicated to the board of directors of the bank. When the "Eugene Lynch note" became due, the appellee made a payment on the old note and sent to the bank a renewal note, presumably for the amount owing on the old note, but Chaffinch wrote him that the board had refused to renew the note. He, thereafter, in October, 1924, went to the bank and paid it, and at that time he again told Chaffinch that his signature upon the other notes was forged and he would not pay them. John K. Lynch was arrested is Pennsylvania and brought back to Caroline County, and was there indicted in October, 1924, upon the charge of forging the name of the appellee to the two notes upon which the judgment was subsequently entered. Both the appellee and Chaffinch were summoned and appeared before the grand jury, by which John K. Lynch was indicted. The case against John K. Lynch was not tried at the October term, 1924, or at the April term, 1925, of the Circuit Court for Caroline County, which convened on the first Monday of April; and, without further notice to the appellee, the appellant had the judgment in this case entered on the following 21st day of April, and on the same day an execution was issued thereon and a seizure and levy made thereunder.

The case against John K. Lynch was removed to Kent County, Maryland, where it was tried in October, 1925, and the defendant acquitted. At once, thereafter, the appellee

consulted counsel and, on the 12th day of November, 1925, he filed his motion to strike out the judgment.

Chaffinch, the vice-president, and at times acting cashier, of the bank, a reluctant witness, called by the appellee, was unable to speak with clearness and definiteness of matters and things of which he should have been fully informed and able to express an opinion. Although he appeared before the grand jury as a witness against the accused John K. Lynch, he, when asked what his opinion was as to the genuineness of the signature, replied saying: "Of course there was some question because Mr. Lynch said he did not sign them. My opinion was that I did not one hundred per cent. know. There was some question in my mind as to whether it was genuine or whether it wasn't. We never admitted anything."

The motion to strike out the judgment was not filed in the term in which it was entered, nor was it filed in the next term, but early in the succeeding term.

It has been stated by this court, in a number of cases, that a judgment should not be stricken out, where the motion is filed after the term in which the judgment is entered, except upon proof of fraud, deceit, surprise, or irregularity. *Graff v. M. & M. Transp. Co.,* 18 Md. 364; *Montgomery v. Murphy,* 19 Md. 578; *Craig v. Wroth,* 47 Md. 282. This rule was first stated and applied before the introduction into use of notes of the character of those upon which the judgment in this case was entered, containing a power to confess judgment without summons or notice to the defendant. The rule had reference ordinarily to judgments recovered after trial or by default, where the defendant had, or was treated as having, knowledge of the entry of the judgment at the time it was entered.

In cases where judgments are entered by confession upon notes like the ones before us, without notice to the defendant, it frequently happens that the defendant does not learn of the entry of the judgment until after the expiration of the term in which it is entered, and, in some cases, a number of terms pass before he has any knowledge of the existence of the judgment. In all such cases, the judgment, under the rule,.

would stand, unless the defendant was able to comply with such rule. This in many instances would work great injustice to the defendant. Since the general use of these notes and the establishment of the practice of entering judgments thereon, the rule has been relaxed, at least, in respect to the judgments entered on such notes. *International Harvester Co. v. Neuhauser,* 128 Md. 173; *Wisner v. Reeside,* 139 Md. 222; *Phillips v. Taylor,* 148 Md. 158; *Automobile Brokerage Corporation v. Myer,* 154 Md. 1; *Keiner v. Commerce Trust Co.,* 154 Md. 366.

A motion to strike out a judgment, though made after the term in which the judgment was entered, is not denied in these cases when it is shown that the defendant has a meritorious, *bona fide,* and substantial defense, and has acted with ordinary diligence and has not acquiesced in the judgment, or unreasonably or unnecessarily delayed the filing of the motion to strike out, especially where it is shown that the plaintiff has not suffered by the delay. "What length of delay is fatal, or what laches will be deemed sufficient to justify the denial of the motion to strike out, depends a great deal upon the facts and circumstances of each case." 2 *Poe, Pl. & Pr.,* sec. 392.

It would seem that even in the earlier cases the rule was not strictly adhered to. In *Tiernan v. Hammond,* 41 Md. 548, a judgment recovered in 1862 against the appellee Hammond, who was then an infant, was stricken out by a motion made by him in 1873, and in *Craig v. Wroth,* 47 Md. 282, the judgment was stricken out on a motion made nearly nine years after its recovery. In both of these cases there were strong equitable circumstances, and the long delay was satisfactorily accounted for. In these cases, the court acts in the exercise of its *quasi* equitable powers, and will take into consideration all the facts and circumstances of the case, and will strike out the judgment where strong equitable circumstances exist, and the delay is satisfactorily accounted for.

It has been difficult at times, in cases coming before this court, to determine when the facts and circumstances intro-

duced in evidence amounted to fraud, deceit, surprise, or irregularity in the obtention of the judgment. The case before us illustrates that difficulty. If the appellant had forged the notes in this case upon which the judgment was entered, it would not be denied, we think, that the judgment was fraudulently obtained. This being so, it is appropriate to inquire what would be the effect thereon if it were shown that the notes, though not forged by the appellant, were forged by another and that fact made known to the plaintiff before the entry of the judgment thereon. The effect upon the defendant would be the same in either case, and if it were necessary in this case to apply the rule, we are inclined to think that the defendant would be entitled thereunder to the relief sought. But this we need not decide, when a like decision may be reached under the relaxed rule applied in *International Harvester Co. v. Neuhauser, supra; Wisner v. Reeside, supra; Phillips v. Taylor, supra; Automobile Brokerage Corporation v. Myers, supra; Keiner v. Commerce Trust Co., supra.*

There are, we think, strong equitable circumstances in this case in support of the relief sought by the appellee. Upon hearing that his brother was suspected of forgery, the appellee at once went to appellant bank and, upon learning of the notes in question, he told one of its officials, Chaffinch, its vice-president and acting cashier, that his name upon the notes was forged, and Chaffinch in reply thereto said, if they were forgeries, he would not be expected to pay them. Thereafter his brother, the party charged with the forgery of the notes, was arrested and indicted at the October term of the Circuit Court for Caroline County. The appellee, as a witness, appeared and testified before the grand jury against his brother, the accused. It is true that the case was not tried at the term of the court in which he was indicted, nor at the succeeding April term of that court, but the fact that he was not so tried was no fault of the appellee, and the case was not finally tried until October of that year, when the brother was acquitted. It was at once thereafter that he took steps to strike out the judgment. The appellant did

nothing towards the enforcement of the payment of the notes, long overdue, until April 21st, 1925, when judgment was entered upon them, and, on the same day, execution was issued and a levy made thereunder. Thereafter no further effort was made to collect the alleged indebtedness. It is evident that both the appellant and appellee were more or less expecting the liability of the defendant to pay said notes to be decided in the criminal case. The appellee was told he would not be expected to pay them if they were forgeries, and he, it seems, expected this question to be determined favorably to him in the trial of that case.

It was alleged, in the motion to strike out, that when the levy was made under the execution on April 21st, 1925, the sheriff then told the appellee: "You need have no alarm or worry over this matter. You will never have a cent of it to pay. We are going to prosecute John K. Lynch and clear this matter up. Just simply lie still and do nothing." Because of a misconception or misunderstanding as to the rulings of the court, first on a demurrer to the paragraph containing said allegation, and thereafter on a motion to strike it out, the appellee was not asked to give in detail this conversation, but was permitted to say that the statements made by the sheriff to him at that time and by the statements of others, including what was said by the bank official, caused him to delay filing the motion to strike out the judgment. This statement made by the sheriff, one authorized and directed under the execution to collect the judgment debt, interest, and costs, may not in a sense have been binding upon the appellant; nevertheless it was admissible, we think, in explaining why the appellee did not take earlier action to have the judgment entered against him stricken out. What the sheriff said, at the time, might well have influenced the appellee in determining appellant's attitude as to such indebtedness, and lead him to believe that no action need then be taken by him in striking out the judgment.

The court in striking out the judgment retained the lien, which lien is still in force, and should the case be reopened

342

and the trial result in a judgment for the appellant, it will not have been injured by the delay complained of.

As was said by the late Chief Judge Boyd, speaking for the court in *International Harvester Co. v. Neuhauser, supra*: "In determining a motion to strike out the judgment, it should be very careful to see that no improper advantage has been taken of the maker of such note in entering the judgment" and as was further said in that opinion, it is "not for us to determine whether the defendant will be able to sustain his case on the merits. He should be given an opportunity to have his defense properly presented." And as was said by Chief Judge Bond in *Phillips v. Taylor, supra*: "In this state judgments entered by confession are freely stricken out on motion at law to let in defenses."

There was, in this case, "a substantial basis for the controversy in which the parties were engaged when the authority for entering a confessed judgment was exercised and the defense thus precluded was not only meritorious, but had been definitely asserted." *Wisner v. Reeside, supra.*

There exists in this case strong equitable circumstances in support of the relief sought by the appellee, and the delay complained of has, we think, been satisfactorily accounted for. We will therefore affirm the judgment appealed from.

*Order affirmed, with costs.*