**ATLANTIC LEASING & FINANCIAL, INC., a corporation, Plaintiff–Appellee,**

v.

**IPM TECHNOLOGY, INC., Defendant–Appellant.**

No. 88–1793.

United States Court of Appeals, Fourth Circuit.

Argued May 10, 1989.

Decided Sept. 15, 1989.

Rehearing and Rehearing In Banc Denied Oct. 23, 1989.

Stephen Henry Kaufman (C. Lamar Garren, Piper & Marbury, Baltimore, Md., on brief) for plaintiff-appellee.

Before WINTER, PHILLIPS, and CHAPMAN, Circuit Judges.

HARRISON L. WINTER, Circuit Judge:

Plaintiff, Atlantic Leasing & Financial, Inc. (Atlantic), obtained a confessed judgment in the amount of $72,434.26 against defendant, IPM Technology, Inc. (IPM), as the guarantor of an equipment lease. IPM appeals the district court's refusal to vacate the confessed judgment asserting federal constitutional and state law error. We affirm.

### I.

IPM is the guarantor of Workman Electronic Products ("Workman"), a previously wholly-owned subsidiary of IPM, with respect to a lease of computer equipment by Workman from Atlantic, a subsidiary of The Bank of Baltimore. The computer equipment was manufactured and sold by the Burroughs Corporation. Atlantic provided financing for the equipment through a sale and lease-back transaction with Workman.

An "Equipment Lease Guaranty" (Guaranty), dated December 3, 1986, provides that IPM:

> unconditionally guarantees (a) to pay Lessor [Atlantic] ... all rents and other sums reserved in the Lease ... in the amounts, at the times and in the manner set forth in said Lease; and (b) to perform, at the time and in the manner set forth in the Lease, all of the terms, convenants and conditions therein required to be kept, observed or performed by Lessee [Workman].

The Guaranty also contains waiver-of-defenses and confessed-judgment provisions which are central to this dispute. The waiver-of-defenses provision states:

> Guarantor waives any right to require Lessor to: (a) proceed against Lessee; (b) proceed against Lessee or the leased equipment or any other security held from Lessee; (c) pursue any other reme-

L. Burke Lewis (Lewis & Company, on brief) for defendant-appellant.

dy in Lessor's power whatsoever; or (d) notify Guarantor of any default by Lessee in the payment of any rent or other sums reserved in the Lease or in the performance of any term, covenant or condition therein required to be kept, observed or performed by Lessee. Guarantor waives any defense arising by reason of any disability or any counterclaim or right of set-off or other defense of Lessee, ...; provided, however, that Guarantor does not waive any defense arising from the due performance by Lessee of the terms and conditions of the Lease.

The confessed-judgment provision states:

Upon a default under this Guaranty, the Lessor may, at its option and without notice or demand, declare an amount equal to the then unpaid balance of the Lessee's obligations under the Lease (the "Unpaid Balance") to be immediately due and payable by the Guarantor.... At any time thereafter, the Guarantor hereby authorizes and empowers any attorney of any Court of Record within the United States to appear for the Guarantor in any Court in one or more proceedings or before any clerk thereof, and confess judgment against the Guarantor, without prior written notice, or opportunity for prior hearing, in favor of Lessor for the Unpaid Balance plus costs of suit and an attorney's fee of 15% of the Unpaid Balance, hereby waiving and releasing, to the extent permitted by Law, all errors and all rights of exemption, appeal, stay of execution, inquisition and extension upon any levy or real estate or personal property to which the Guarantor may otherwise be entitled under the laws of the United States or of any state or possession of the United States now in force or which may hereafter be passed.

In June 1988, Workman stopped making lease payments due to the alleged failure of the computer equipment to function properly or as promised. According to Workman, Burroughs' service personnel considered the computer system beyond repair. Layne F. Huttenberger, an Atlantic employee, telephoned Seymour Kahn, President of IPM, to inform him of lessee's default and demand payment. Kahn asserts that Huttenberger subsequently agreed to make arrangements for Burroughs to take back the equipment and thereafter to terminate the obligations of Workman and IPM under the Lease and the Guaranty. Huttenberger counters that no such representation was made, but that he did offer to reduce the debt owed under the lease by the then-undetermined value of the equipment in exchange for prompt payment under the Guaranty by IPM.

On June 20, 1988, the district court entered a judgment by confession against IPM in favor of Atlantic in the amount of $62,986.32 plus interest, costs, and $9,447.94 in attorneys' fees. Atlantic was represented before the court by an attorney from the Baltimore law firm of Piper & Marbury. A second attorney from Piper & Marbury appeared on behalf of IPM pursuant to the confessed-judgment provision which authorizes such an appearance by "any attorney" of the "Court of Record." Notification of the judgment and of IPM's right to file a written motion seeking to open, modify, or vacate it was sent to IPM by the court clerk pursuant to statute. Notification of the judgment was also sent to IPM by Atlantic.

IPM moved to vacate the judgment on the grounds that it was uninformed as to the consequences of the contract terms to which it had agreed and that the confessed-judgment provision as applied constituted an impermissible deprivation of its due process rights under the Fourteenth Amendment. Officers of IPM stated in affidavits that it had relied on the good faith of its contractors and that it would not have agreed to the Guaranty if it had been specifically apprised of the confessed-judgment provision. IPM also claimed to have been misled by Burroughs or Atlantic, or both, as to their relationship, the legal effects of the Guaranty, and the quality of Burroughs' equipment and service. Finally, IPM challenged the claimed attorneys' fees as "inherently unreasonable."

## II.

### A.

IPM raises several due process challenges on appeal. The first of these is that

there was no valid waiver of its rights to notice and a hearing; in other words, that at least a portion of the contract should be deemed unenforceable. Both parties recognize *D.H. Overmyer Co., Inc. of Ohio v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), as the seminal case regarding the constitutionality of confessed-judgment contract provisions. IPM argues that *Overmyer* establishes a rarely met threshold for finding these provisions consistent with "current notions of the Fourteenth Amendment due process." 405 U.S. at 178, 92 S.Ct. at 779.

In *Overmyer*, the Court first noted that "due process rights to notice and hearing prior to a civil judgment are subject to waiver." 405 U.S. at 185, 92 S.Ct. at 782. The Court then assumed, without explicitly deciding, that the standard for assessing the validity of such waiver in a corporate property-right case was the same as that in a criminal proceeding: i.e., "that it be voluntary, knowing, and intelligently made, or 'an intentional relinquishment or abandonment of a known right or privilege' ...." 405 U.S. at 185–86, 92 S.Ct. at 782 (citations omitted). The Court then reviewed the particular facts of the case and concluded that the waiver had, in fact, been voluntarily, knowingly, and intelligently made.

The Court in *Overmyer* closed with three "concluding comments":

1. Our holding necessarily means that a cognovit clause is not, per se, violative of Fourteenth Amendment due process. * * *

2. Our holding, of course, is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue.

3. Overmyer, merely because of its execution of the cognovit note, is not rendered defenseless. It concedes that in Ohio the judgment court may vacate its judgment upon a showing of a valid defense.... And there is nothing we see that prevented Overmyer from pursuing its breach-of-contract claim against Frick in a proper forum.

405 U.S. at 187–88, 92 S.Ct. at 783.

■ We have no doubt that the district court properly viewed IPM's assent to the confessed-judgment provision as having been voluntarily, knowingly, and intelligently made. IPM's Board of Directors specifically authorized its officers to enter into the agreement, and IPM's supporting affidavits reveal that its officers were aware that it otherwise would be entitled to a full judicial resolution of any dispute. This is not a typical adhesion contract situation despite IPM's contention that Atlantic was thrust upon it in the last moments of its negotiations with Burroughs. Nor is there any evidence of gross disparity in bargaining position: there is nothing to suggest that IPM lacked access to alternative computer suppliers, to alternative financing sources, or to competent legal counsel.

■ IPM contends the lack of review by legal counsel and lack of evidence that the confessed-judgment provision was bargained for specifically—two factors present in *Overmyer*—render the waiver constitutionally invalid. We disagree. While these factors may be evidence of an invalid waiver, neither is required in order to have an intelligent waiver.

IPM's stock is publicly traded on the American Stock Exchange and its officers and directors are presumably sophisticated businessmen. As explained by counsel, at some point in time IPM concluded that it is impractical to have every contract reviewed by counsel. This hardly excuses its officers and directors from an obligation to read the contract carefully on their own and to seek legal assistance if something is not clearly understood. As the district court found, the confessed-judgment provision was written in "plain and simple English in regular type in the body of the agreement."

■ Similarly, *Overmyer* does not make specific consideration for a confessed-judgment clause a constitutional prerequisite. As an evidentiary matter, the existence of

specific consideration obviously supports a finding of knowing and intelligent waiver, but its absence does not establish the contrary as a matter of law.

## B.

IPM also claims that procedural safeguards inherent in the applicable law of cognovit were impermissibly ignored or disregarded by the district court.[1]

First, IPM contends that confessed judgment should not have been granted because Atlantic's affidavit in support of its complaint was inadequate. IPM argues the affidavit fails to set forth the basis for the amount claimed, the basis on which Atlantic claims the Guaranty was entered into voluntarily and knowingly, and the basis on which Atlantic asserts attorneys' fees in the amount of 15% of the principal owed is reasonable.

The Local Rules for the District Court of Maryland place an initial burden on the plaintiff in a confessed-judgment proceeding to submit an affidavit stating "the specific circumstances of defendant's execution of said instrument, and including, where known, the age and education of the defendant, and further including the amount due thereunder...." D.Md. Local Rule 36(A). Atlantic's affidavit complied with the district court's local rule by identifying the parties, stating the amount of liquidated damages, and describing the nature of the underlying transaction and the execution of the guaranty agreement. No more is necessary to make out a plaintiff's prima facie case under the local rules of the district court.

Nor does the law of Maryland demand any more of a plaintiff in a confessed-judgment proceeding. In *Billingsley v.*

*Lincoln National Bank,* 271 Md. 683, 320 A.2d 34, 37 (1974), the Court of Appeals of Maryland noted that the Maryland confessed-judgment statutory scheme was nearly identical to the Ohio scheme reviewed in *Overmyer.* The Maryland court observed that *Overmyer* does not require an evidentiary hearing to determine whether defendant's waiver was voluntarily, knowingly, and intelligently made before a confessed judgment may be entered by the court. Rather, the burden is on defendant in its motion to vacate and in any hearing thereon to set forth fully the evidence showing either that the alleged amount owed had no basis in fact (e.g., was miscalculated) or that the agreement was not knowingly and voluntarily entered. *Id.* 320 A.2d at 39; *see also* Md.R. 2–611. Accordingly, we perceive no error in the initial entry of a confessed judgment against IPM.

## C.

Next, IPM argues that it presented substantial evidence of actual controversy regarding the merits of the case, and that it was therefore entitled to have the confessed judgment vacated. The district court held that "defendant specifically waived any defense which it might have to an action on the guaranty. Of course, defendant and/or Workman are not barred from independently pursuing any of their asserted claims against plaintiff."[2]

IPM argues that the district court committed reversible error in two respects. First, it contends that the Maryland law of confessed judgment establishes its right to present such defenses, and that the judgment must be vacated upon a minimal showing of meritorious defense. *See Billingsley, supra; Shafer Brothers v. Kite,*

---

1. The Guaranty specifies that Maryland substantive law shall govern the interpretation of the agreement and that the guarantor submits to the jurisdiction of either the Maryland state courts or Maryland federal district court.

2. IPM contends that it was fraudulently induced to enter the Guaranty by misrepresentations concerning the quality of Burroughs' equipment and service, and concerning the corporate relationship between Atlantic and Burroughs. IPM

also asserts that Atlantic and Burroughs failed to disclose that Burroughs had been the target of numerous suits concerning similar equipment, and that Atlantic had agreed to arrange for the return of the equipment thereby creating an accord and satisfaction. IPM further contends that it intends to pursue claims for set-off, breach of contract, breach of warranty, and violation of RICO (18 U.S.C. § 1961) if permitted to go to trial.

43 Md.App. 601, 406 A.2d 673, 676–77 (1979). Second, IPM contends that federal procedural rules would likely preclude it from pursuing these counterclaims in an independent action because they arise from the same "transaction or occurrence" giving rise to the existing suit. *See* F.R.C.P. 13(a). We address these arguments in turn.

Under Maryland law the confessed judgment must be opened, modified, or vacated if the debtor presents evidence "sufficient to persuade the fair and reasoned judgment of an ordinary man that there are substantial and sufficient grounds for an actual controversy as to the merits of the case." *Billingsley*, 320 A.2d at 37 (citations and emphasis omitted). In other words, a "confessed judgment may be opened if the debtor poses a jury question, that is, if his evidence would have been sufficient to prevent a directed verdict against him." *Id.* at 38. *See also* Md.R. 2–611(d) (modification of the judgment is mandatory upon showing of "substantial and sufficient basis for an actual controversy as to the merits of the action"). When ruling on a motion to vacate, the trial judge must decide as a matter of law whether the facts presented, construed in the light most favorable to the movant, constitute a meritorious defense. *Shafer Brothers*, 406 A.2d at 677. However, the mere assertion of a defense is insufficient to satisfy the burden of proof necessary to vacate a confessed judgment. *Murray v. Steinmann*, 29 Md.App. 551, 349 A.2d 447, 453 (1975). Rather, the defendant must raise a genuine issue of material fact sufficient to constitute the asserted defense. *Centennial Industries, Inc. v. Union Trust Co.*, 75 Md. App. 202, 540 A.2d 1169, 1175 (1988).

With these standards in mind, we conclude that the district court did not err in refusing to vacate the judgment, although our reasoning extends somewhat beyond that adopted by the district court.

■ We agree that the bulk of IPM's purported defenses are eclipsed by the waiver-of-defenses clause contained in the Guaranty. IPM waived "any defense arising by reason of any disability or any counterclaim or right of set-off or other defense *of Lessee* [Workman] ... or the cessation from any cause whatsoever of the liability *of Lessee....*" (emphasis added). Accordingly, any purported defenses arising from the decision to procure Burroughs' computer equipment or the alleged failure of such equipment (e.g., breach of warranty, breach of contract, misrepresentation, failure to disclose, etc.) may not be asserted as a matter of law.

■ However, we perceive a second class of alleged defenses that arguably relate to IPM's decision to enter the Guaranty (e.g., fraud as to the relationship between Atlantic and Burroughs, misrepresentation or failure to disclose other suits, etc.) rather than to Workman's equipment selection and the performance of that equipment. Although the decisions to engage in the sale/lease-back and to enter the Guaranty are inseparable as a business matter in this case, we read the waiver-of-defenses clause to apply only to those defenses available to and originating with the lessee. There is no waiver with respect to those potential defenses arising from IPM's status as a party to the Guaranty itself.

■ Nevertheless, we affirm the district court's refusal to vacate the confessed judgment because IPM failed in the affidavits presented to the district court to "set forth fully" the facts necessary to constitute a cognizable defense. *See Billingsley*, 320 A.2d at 39 (quoting statutory predecessor to Md.R. 2–611); *Centennial Industries*, 540 A.2d at 1175. IPM's claims of fraud and misrepresentation as to the relationship of Atlantic and Burroughs are supported only by statements as to the "impression" of two of IPM's officers. There is no declaration as to the specific representations allegedly made, the circumstances under which they were made, the identities of those making such representations or to whom they were made. Bald assertions are simply inadequate. *Murray, supra.* Similarly, IPM has not alleged sufficient facts to support a duty to disclose or to establish an accord and satisfaction.

Finally, we decline to determine whether any or all of IPM's purported defenses are compulsory counterclaims within the meaning of F.R.C.P. 13(a). That question is not properly before the court at this time, and it is not a basis on which to overturn the district court's decision in this case.

### III.

IPM's remaining claims may be addressed quickly. IPM argues that plaintiff's counsel should be disqualified for conflict of interest because a second attorney from Piper & Marbury entered a formal appearance on IPM's behalf during the initial proceeding in the district court. Such an appearance is purely a ministerial act that, under the terms of the contract, may be performed by any member of the Bar irrespective of actual representational authority from IPM. No representational authority is presumed: the court clerk is charged with the responsibility to serve defendant with notice of the judgment. Accordingly, we perceive no conflict of interest or basis for disqualification.

We find support for this view in an advisory opinion issued by the Maryland State Bar Association Committee on Ethics (Docket No. 84–62) stating, *inter alia,* "[T]his Committee can conceive of no foreseeable prejudice to the defendant by having a member of plaintiff's counsel's firm appear for the very limited ministerial purpose of confessing a judgment." *See also International Harvester Co. v. Neuhauser,* 128 Md. 173, 97 A. 372 (1916) (confessed judgment will not be striken simply because attorney appearing on behalf of defendant is without express authority to do so).

IPM also challenges as "unconscionable" the award of attorneys' fees in the amount of 15% of the principal judgment. Although we think that legal fees of this magnitude for very little work may be justly criticized, Maryland courts do not find such fees presumptively improper in a commercial transaction that is otherwise free of over-reaching. *See Mortgage Investors of Washington v. Citizens Bank and Trust Co.,* 278 Md. 505, 366 A.2d 47, 50 (1976). The contract clearly and expressly provides for such fees. We are bound by the law of Maryland and therefore we have no basis on which to dishonor the terms agreed to by the parties.

AFFIRMED.